```
                  IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| UNITED STATES OF AMERICA : <br>  : <br> v. : Criminal No. 09-899 (JBS) <br>  : <br> TERRELL BRUNSON, : <br>  : **O P I N I O N** <br>             Defendant. : <br>  : |  |

APPEARANCES:

PAUL J. FISHMAN,
United States Attorney
     By:  Charlton Rugg, AUSA and
          Barbara Llanes, AUSA
970 Broad Street
Newark, NJ  07102

Gerald M. Salutti, Esquire
SALUTTI LAW GROUP
60 Park Place, Second Floor
Newark, NJ  07102
     Attorney for Defendant

SIMANDLE, District Judge:

     This matter is before the Court upon motion by Defendant, Terrell Brunson, to suppress evidence that was obtained following the stop of the motor vehicle he was driving.  He alleges that the police officer lacked reasonable cause to stop his motor vehicle on August 27, 2009, and that evidence seized as a result of that stop, namely a firearm and the defendant's inculpatory statement regarding his possession of that firearm, were obtained in violation of the Constitution and should therefore be

suppressed.  Defendant Terrell Brunson is charged in a one-count Indictment with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).

The Court conducted an evidentiary hearing upon the suppression motion on March 18, 2011.  At the hearing, the United States presented the testimony of the arresting officer, Michael Giordano, of the Newark Police Department.  Defendant presented the testimony of the witness who was his passenger at the time in question, Mr. Kinte Warnock.  Additionally, the United States introduced exhibits G-1, 2, 4, and 5 consisting respectively of a schematic map of the streets in question, two photographs, and the traffic ticket issued by Officer Giordano to Mr. Brunson for careless driving in the August 27, 2009 incident.

The principal issue to be determined is whether Officer Giordano had a reasonable basis for effecting this traffic stop for careless driving, a violation of New Jersey's Motor Vehicle Code at N.J.S.A. 39:4-97.  If the stop was reasonable under governing law, there is no additional issue raised by the Defendant as to the lawfulness of the seizure of the firearm or the obtaining of Mr. Brunson's statement at the time of the stop.

I.   <u>FACTUAL FINDINGS</u>

On the evening of August 27, 2009, Officer Michael Giordano and his partner, Officer Philip Turzani of the Newark Police

Department, were on patrol as members of the Central Narcotic Division. While on duty, they were dressed in civilian attire driving an unmarked Chevrolet Suburban, patrolling the western area of Newark.

The time of the incident was approximately 10:40 P.M.

Meanwhile, Terrell Brunson had closed his store, located about eight minutes away in Irvington, New Jersey, at about 9:00 P.M., and he was driving two of his employees home, namely, Marsha Padmore and Kinte Warnock. Brunson was driving a Ford Expedition, which is a large SUV, about the size of the Chevy Suburban driven by Officer Giordano. According to Brunson's passenger, Kinte Warnock, who was seated in the front passenger seat, they were dropping off Ms. Padmore who lived in the vicinity of 18th Street and South Orange Avenue in Newark.

Thirteenth Avenue in Newark runs roughly east-west and it intersects with several streets including South 20th Street, South 19th Street, and South 18th Street, each of which run generally north and south. Thirteenth Avenue is a two-way street with stop signs at the corner of 20th Street and 19th Street. (See Exhibits G-2 and G-4). Twentieth Street is a two-way street, while 19th Street is one-way running north. (See Exhibit G-1).

Officer Giordano testified, credibly in this Court's view, that he and Detective Turzani were on patrol in their Suburban

3

driving slowly northbound on 19th Street, about five miles per hour, looking for indications of suspicious drug activity.  He turned left onto westbound 13th Avenue.  Just as he entered 13th Avenue, he noticed defendant's Ford Expedition, which had been northbound on 20th Street, make an erratic right turn onto eastbound 13th Avenue.  The Ford Expedition turned the corner so quickly that it was leaning as it rounded the curve and veered widely into the westbound lane of 13th Avenue, coming at Giordano's vehicle which was facing westbound.  Officer Giordano testified that defendant's vehicle became an oncoming eastbound vehicle in the wrong lane for about two seconds as Giordano proceeded westward.  Giordano stopped as soon as he saw the oncoming Ford Expedition.  Giordano immediately reached for his flashlight and signaled the Ford Expedition to stop.

     Giordano testified that the Expedition came to a stop next to Giordano's Suburban, driver-door to driver-door, with about one car width between the vehicles.  The point where the vehicles stopped was on 13th Avenue closer to South 19th Street.  In other words, defendant's vehicle had traveled most of the block of 13th Avenue from 20th Street to 19th Street before it stopped.  Officer Giordano estimated that the Ford Expedition was traveling roughly 20-30 miles per hour as it rounded the corner from 20th Street onto 13th Avenue.

The officers identified themselves as Newark police officers and got out of the car. Mr. Brunson appeared to be cooperative and the police identified the passengers as stated above. During the course of the stop, the defendant volunteered that he had a gun and wanted no trouble, and the gun was removed from his person.

Mr. Brunson was arrested and placed in the police vehicle, and the two passengers were allowed to leave. Officer Giordano shortly thereafter wrote a traffic ticket charging Mr. Brunson with careless driving in violation of N.J.S.A. 39:4-97. Officer Giordano testified that he believed that the manner in which Brunson took a wide, fast right turn onto 13th Avenue, drifting during the course of the turn entirely into the wrong lane, on-coming to Giordano's own vehicle, was careless and that is the reason he stopped Brunson's vehicle. There is no evidence that Giordano knew Brunson or his vehicle or had ever encountered them before.

Passenger Kinte Warnock testified to a very different version of events. He was an employee of Mr. Brunson's clothing store. They have been friends for about 20 years. Mr. Warnock has had his own brushes with the law, having previously been convicted of a drug felony charge in the early 1990s for which he received probation, possession of a handgun in 1996 for which he also received probation, and he is now currently on probation for

piracy of CD's and DVD's under supervision of the Superior Court of New Jersey.

Mr. Warnock testified that the Brunson vehicle, with its three occupants listening to music, was headed north on 20th Street. He said that Brunson came to a full stop at 20th Street and turned in a normal fashion onto eastbound 13th Avenue. According to Warnock, Brunson was not driving in a careless fashion. Instead, he stayed to the right on 13th Avenue and never crossed to the other side, and he remained within the speed limit when he saw Giordano's Suburban turning left from northbound 19th Street onto westbound 13th Avenue. The unmarked police Suburban itself was in the wrong lane, coming head-to-head toward the Brunson vehicle, according to Warnock. Brunson stopped when the Suburban approached him. The occupants of the Giordano vehicle shined flashlights at the Brunson vehicle. Mr. Warnock recalls that the police did not get out at first and that he didn't know why they stopped Brunson. The officers asked Brunson for his driving credentials, which he provided to them, according to Warnock.

On cross-examination, Mr. Warnock repeated that Brunson had stopped fully at the corner of 20th Street and 13th Avenue, although he does not know if there is a stop sign. In fact, the evidence shows unmistakably that there is no stop sign for traffic northbound on 20th at 13th Avenue. In other words, there

was no reason for Brunson to stop at all, and Mr. Warnock's testimony about coming to a full stop appears to this Court to be an incredible statement attempting to help Mr. Brunson, who is his friend and former employer.  Mr. Warnock also admitted that he has had numerous points on his driver's license as well as license suspensions.  It appears to this Court that Mr. Warnock may not have been paying full attention to Mr. Brunson's driving, and that Mr. Warnock may not be in a good position to determine what is safe or careless about Brunson's driving.

The Court accepts Officer Giordano's testimony, as narrated above.  Giordano testified in a forthright manner, without any meaningful contradiction or implausibility.  Although he could not recite the text of the careless driving statute at N.J.S.A. 39:4-97, he credibly believed that he had witnessed a motor vehicle violation due to the erratic driving by Mr. Brunson described above.

The logistics of Officer Giordano's description of the incident also makes sense.  Mr. Brunson had rounded the corner from 20th Street onto 13th Avenue at a higher rate of speed, causing his Ford Expedition to tilt and necessitating a wide turn into the oncoming lane of travel.  Giordano, on the other hand, was patrolling at just five miles per hour and did not get very far down 13th Avenue before encountering Brunson's vehicle coming at him.  Thirteenth Avenue, as noted, is a short block and

Brunson was probably already beginning to brake for the stop sign that he would encounter at 19th Street on 13th Avenue. It did not take Giordano more than a second or two to reach for his flashlight, and flash the other vehicle to stop. In the meantime, the Brunson vehicle had gotten within 20 to 25 yards of Giordano's vehicle, head-on, before righting itself into its proper lane of travel. While there is no evidence one way or the other whether cars were parked along 13th Avenue, it is clear that Giordano reasonably believed that Brunson's driving was likely to endanger the Giordano vehicle, since Brunson was driving against traffic, and Giordano reduced the risk of a collision by himself stopping his vehicle to avoid the oncoming Brunson vehicle.

## II. LEGAL CONCLUSIONS

A traffic stop is a "seizure" under the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 653 (1979). The lawfulness of a traffic stop is "reviewed under the investigatory detention framework first articulated in Terry v. Ohio, 392 U.S. 1 (1968)." United States v. Delfin-Colina, 464 F.3d 392, 396 (3d Cir. 2006). A traffic stop is reasonable, and thus not violative of the Fourth Amendment's ban on unreasonable searches and seizures, if it is supported by "a reasonable, articulable suspicion that

criminal activity is afoot." Id. (citations and internal quotation marks omitted.)

A traffic stop will be reasonable "when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop." Delfin-Colina, 464 F.3d at 398. Such a "reasonable, articulable suspicion" is a "less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." Id. at 396 (citing Illinois v. Wardlow, 528 U.S. 119, 123 (2000)).

Here, Officer Giordano indeed had a reasonable, articulable suspicion that Brunson, while driving the Ford Expedition, was guilty of careless driving in violation of N.J.S.A. 39:4-97. That statute provides:

> A person who drives a vehicle carelessly, or without due caution and circumspection, in a manner so as to endanger, or be likely to endanger, a person or property, shall be guilty of careless driving.

N.J.S.A. 39:4-97.

Based upon Officer Giordano's own observations, as credibly narrated in his testimony, he reasonably believed that a careless driving offense had taken place. He articulated the facts, which this Court credits, that he saw the Brunson vehicle round the corner onto eastbound 13th Avenue at such a rate of speed as to propel it into the left (westbound) lane for about two seconds,

9

before it corrected its course crossing back into the right lane as it was approaching the oncoming police vehicle.  Although there was no collision, Brunson had created a likelihood of endangering the police vehicle.  Officer Giordano's decision to stop the Brunson vehicle for careless driving was therefore reasonable and based on objective, articulated facts.

The decision by Officer Giordano to stop the Brunson vehicle for careless driving was reasonable, and it more than satisfies the <u>Terry</u> standard as applied in <u>Delfin-Colina</u>, above.

Accordingly, the United States has demonstrated that this seizure did not violate Brunson's Fourth Amendment right to be free from unreasonable seizure.

Defendant has raised no other basis for suppressing the firearm that was seized from him during the vehicle stop, nor for suppressing his statements to the police officers regarding his possession of the firearm.

Defendant's motion to suppress this evidence shall be denied.

The accompanying Order is entered.


**March 31, 2011**                                    **s/ Jerome B. Simandle**
Date                                                  Jerome B. Simandle
                                                      U.S. District Judge

10